UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Wanda Cote | ) |
| | ) |
| v. | ) Case No. |
| | ) |
| Justine Merced, | ) |
| Joshua Stevens, | ) |
| Jessie Hamlin, | ) |
| Christopher Rothwell, | ) |
| and Chief Wade Parsons | ) |
| | ) |

**COMPLAINT**
*Jury Trial Demanded*

NOW COMES the Plaintiff, Wanda Cote, by and through counsel, and complains against Justine Merced, Joshua Stevens, Jessie Hamlin, Christopher Rothwell, and Chief Wade Parsons as follows:

**INTRODUCTION**

1. This is a case that presents the fallout from an overzealous town officer seeking to take down a local farmer. Wanda Cote, who is married to Charles Cote, lives on a farm in Danville, New Hampshire. The town had engaged with Charles in extensive litigation over whether the zoning laws permitted Charles to sell puppies from his property. Years later, after receiving word that the Cotes continued to sell puppies, Officer Justine Merced launched an investigation against Wanda Cote, the purported seller. However, even though the Superior Court had clarified that the puppies for sale on the Cotes' farm were "livestock" and exempted from licensing requirements, decided to institute a prosecution for selling puppies without a license anyway. Then, during the litigation, Merced continued

to seek ways to get criminal charges to stick against Cote, so she instituted bail violation charges for conduct she did not engage in. Finally, when arresting Cote for the latest charges, she slammed the door against her and paraded her nude by male officers. Wanda Cote has suffered since.

## PARTIES

2. Wanda Cote is a natural person and a resident of New Hampshire.

3. Defendant Town of Danville Police Department ("Danville") is a municipal department of the Town of Danville, NH. It maintains a staff of police officers with a headquarters at 206 Main St, Danville, NH 03819

4. Defendants Lieutenant Justine Merced, Lieutenant Joshua Stevens, Sargent Jessie Hamlin, Officer Christopher Rothwell, and Chief Wade Parsons (collectively the "Police Defendants") at all times relevant, were certified police officers acting under color of state law as employees, agents or contractors of Defendant Danville. They are being sued individually and not in their official capacity.

## VENUE AND JURISDICTION

5. This Court has jurisdiction to hear this claim pursuant to RSA 491:7.

6. Venue is appropriate in this county because Defendant Danville is located in this county. RSA 507:9 and the acts and omissions complained of occurred here.

## FACTS

7. On the morning of April 10, 2020, Dr. Stephen Crawford, State Veterinarian, called the Danville PD to inform them that he had requested health certificates for Plaintiff Wanda Cote's pets from Dr. Irving Salkovitz who produced 141 health certificates for the time period of July 2019 to February 2020.

8. Dr. Crawford informed Danville PD that Mrs. Cote was not licensed by the state and was in violation of RSA 437:8.

9. Dr. Crawford informed Danville PD that he would be pursuing administrative penalties.

10. On August 3, Officer Justine Merced of the Danville Police Department obtained a search warrant to investigate whether the Cotes were selling puppies in violation of state licensing requirements.

11. On August 10, 2020 Charles Cote registered the trade name "PuppiesR4Sale" with the State of New Hampshire in his name only.

12. On January 19, 2021 Wanda turned herself in on 13 misdemeanor charges alleging the crime of "Transferring Household Pets Without a License." The wrong RSA was used in the complaints.

13. The corresponding complaints were signed by Justine Merced and contended that Cote's pet selling was illegal in the absence of a license.

14. However, the puppy breeding and sales occurred on a farm, where the puppies were considered "livestock" and exempt from the licensing requirements. *See.* RSA 437:7.

15. On March 9, 2021, Judge Weaver issued a bail order prohibiting Cote from "selling" puppies illegally.

16. In the summer of 2021, Justine Merced began a new investigation into whether puppies, who continued to be sold legally as "livestock" at the Cote farm, were being sold by Wanda Cote.

17. On December 8, 2021, armed with a warrant, Justine Merced entered the house on the Cotes' farm with a team assembled for warrant execution.

18. The team included Joshua Stevens, Jessie Hamlin, Christopher Rothwell, and Chief Wade Parsons.

19. Charles Cote was not home at the time.

20. Wanda Cote was just getting out of the shower and had walked on to the patio in a towel, hearing a knock at the door. She then heard commands from Justine Merced.

21. As Wanda tried to explain that she wanted to get dressed, Merced insisted that she instead be placed in handcuffs.

22. Wanda tried to cover herself, but Justine Merced used a door to slam her against a wall 2-3 times, causing Wanda pain.

23. Once secured, Merced escorted Wanda out of her bedroom and down the stairs in front of the warrant execution team while still naked.

24. Joshua Stevens and Jessie Hamlin witnessed Merced parading Wanda through the house, in front of male officers, without justification, and did nothing to stop it.

25. There, Wanda heard at least one male officer making humiliating comments about her body, particularly her breasts.

26. Thereafter, Charles returned home, finding Wanda naked and in handcuffs with the officers. He immediately insisted that Wanda be allowed to dress herself, which Merced allowed.

27. Though all the evidence gathered by Merced pointed to the fact that Charles was selling the puppies, Merced nonetheless initiated charges against Wanda for breaching the bail condition that prohibited selling puppies.

28. Wanda hired the services of a criminal defense attorney to defend the charges.

29. By November 2023, all charges were dismissed in accordance with the provisions of a deferred prosecution agreement in which Wanda Cote maintained her innocence.

*Count I — Excessive Force (vs. Justine Merced)*

30. The foregoing paragraphs are incorporated as if set forth in full.

31. Federal law provides a private right of action when a person is deprived of a federal constitutional right by a person acting under the color of state law. 42 U.S.C. § 1983.

32. Defendant Merced, at or before the time she commanded Cote to submit to her, effected a seizure of Cote that continued through her release from custody.

33. In effecting that seizure, Defendant Merced unlawfully and unreasonably slammed Cote with a door 2-3 times, which caused Cote unnecessary pain and discomfort.

34. Cote, at the time the unlawful battery commenced, had not committed any crime, nor was she attempting to avoid a lawful seizure, nor did she pose any threat to Merced's safety to the safety of the public.

35. At all times relevant to this claim, Defendant Merced was operating under the authority of the Danville Police Department and her actions purported to be authorized by state law. Further, a reasonable person in Merced's position should have known that her acts and omissions violated clearly established law guaranteeing those rights under the Fourth and Fourteenth Amendments to the United States Constitution.

36. As a result of the foregoing, Cote has suffered harms for which she seeks relief within the jurisdictional limits of this Court.

*Count II — Common Law Assault (vs Justine Merced)*

37. The foregoing paragraphs are incorporated as if set forth in full.

38. At all times relevant, Merced owed Cote a duty to refrain from using excessive force against her.

39. Merced intentionally physically assaulted Cote in an offensive and injurious manner, which itself is excessive force.

40. As a result of the conduct, Cote suffered physical and nonphysical injuries.

41. The force that Merced used was unreasonable, unlawful, wanton, and malicious, and was not necessary to perform her duties, entitling Cote to enhanced compensatory damages.

*Count III —Unreasonable Seizure (vs. Justine Merced)*

42. The foregoing paragraphs are incorporated as if set forth in full.

43. The Fourth Amendment to the United States Constitution, incorporated against State actors through the Fourteenth Amendment, protects the people from enduring unjustified nudity during an arrest. *See L.A. County v. Rettele*, 550 U.S. 609, 615 (2007).

44. Nudity is unjustified in the absence of an objectively reasonable security need.

45. When Merced attempted to execute a search warrant on December 8, 2021, she found Cote naked and coming out of the shower. At the time, no security need justified any prolonged nudity. Yet, Merced refused to permit Cote to put on clothing. And, after securing Cote, Merced escorted Cote to another area in the house in front of male officers.

46. Cote suffered humiliation and severe emotional distress as a result of the unlawful conduct.

*Count IV —Intentional Infliction of Emotional Distress (vs. Justine Merced)*

47. The foregoing paragraphs are incorporated as if set forth in full.

48. By parading Cote naked through her house in front of the warrant execution team, Merced intentionally caused Cote to experience emotional distress.

49. As a result of Merced's unlawful conduct, Cote actually experienced emotional distress taking the form of sleeplessness, extreme anxiety, and more.

*Count V —Failure to Intervene (vs. Joshua Stevens, Jessie Hamlin, Christopher Rothwell, and Chief Wade Parsons)*

50. The foregoing paragraphs are incorporated as if set forth in full.

51. These Defendants were aware that Merced unreasonably and/or intentionally committed acts or omissions while acting under the color of state law that violated Cote's rights as guaranteed by the United States Constitution.

52. These officers are thereby liable for failing to intervene in Merced's unconstitutional deprivation of rights against Cote. *See Randall v. Prince George's Cnty*. 302 F.3d 188, 203 (CA4 2002) ("[A] law officer's duty [is] to uphold the law and protect the public from illegal acts, regardless of who commits them.")

53. Cote suffered humiliation and pain as a result of these officers' failure to intervene.

*Count VI —Constitutional Malicious Prosecution (vs. Justine Merced)*

54. The foregoing paragraphs are incorporated as if set forth in full.

55. Defendant Merced instituted a prosecution against Plaintiff Cote by signing and submitting the criminal complaints alleging violations of the pet selling licensing statutes and breach of bail.

56. As to the first set of charges, the law used to charge Wanda Cote, RSA RSA 437:8 did not apply to her because the puppies being sold were "livestock." *See* RSA 437:7, I. The town had previously litigated a separate issue with Charles Cote, in which the New Hampshire Supreme Court recounted the undisturbed finding of the Superior Court as follows:

> RSA 21:34-a, II (Supp. 2016), which generally defines "farming" for purposes of New Hampshire statutes, includes the raising and breeding of dogs for sale, likening dogs to "livestock" under RSA 21:34-a, II(a)(4) and

"domesticated . . . fur-bearing animals" under RSA 21:34-a, II(a)(9). Accordingly, the trial court affirmed the ZBA's determination that "breeding on site and selling animals" is an allowed farm use in the Town's "Residential/Agricultural Zone."

57. As to the bail violation charges, Justine Merced knew that Wanda Cote was not selling puppies in violation of her bail conditions. The sale of the puppy happened in Kingston New Hampshire out of Justine Merced's jurisdiction. In fact, the witness told her that Charles was the contracting party, while Wanda was merely acting as a cashier. The Dates on the search warrant were incorrect and later had to be amended.

58. Thus, both sets of charges were instituted without probable cause and thus for a purpose other than bringing an offender to justice.

59. The charges terminated in Cote's favor, as they did not result in conviction. *Thompson v. Clark*, 596 U.S. 36 (2022).

60. The malicious prosecution caused Cote to experience increased stress, anxiety, sleeplessness, humiliation, and more.

WHEREFORE, the Plaintiff prays this Honorable Court will:

A.  Empanel a jury to determine whether the Defendants are liable for the actions recounted in this Complaint;

B.  Find the Defendants liable on all counts;

C.  Order the Defendants to pay compensatory damages and pre-judgment interest;

D.  Order the Defendants to pay Cote's attorney's fees to the extent authorized by 42 U.S.C. § 1988; and

E.  Grant such other and further relief as may be just and

Respectfully submitted,
**Wanda Cote**
By and through her attorney,


/s/ Keith Mathews
Keith Mathews, Esq.
Bar No. 20997
AWP Legal
1000 Elm Street, Suite 800
Manchester, NH 03102
603-622-8100