**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Wanda Cote

    v.                                                Case No. 24-cv-336-AJ

Justine Merced, et al.


**ORDER**

Plaintiff Wanda Cote brings this lawsuit against the Town of Danville, New Hampshire Police Department ("Danville") and various Danville officers,[1] alleging that they violated her Fourth Amendment rights while executing a search warrant at her home in December 2021. Specifically, Cote asserts the following claims under 42 U.S.C. § 1983: excessive force (Count I); unreasonable seizure (Count III); failure to intervene (Count V); and malicious prosecution (Count VI).[2] She also brings claims of assault (Count II) and intentional infliction of emotional distress (Count IV) under New Hampshire common law.

Defendants now move to dismiss (Doc. No. 10) Counts I, III, V, and VI of Cote's complaint under Federal Rule of Civil

---

[1] The following Danville officers are named defendants: Lt. Justine Merced, Lt. Joshua Stevens, Sgt. Jessie Hamlin, Officer Christopher Rothwell, and Chief Wade Parsons.

[2] This court has jurisdiction pursuant to 28 U.S.C. § 1331. The parties then consented to the jurisdiction of the undersigned magistrate judge. Consent to Jurisdiction (Doc. No. 14).

Procedure 12(b)(6).  Cote objects (Doc. No. 13).[3]  For reasons
explained below, defendants' motion is granted in part as to
Count V and otherwise denied.

### Applicable Legal Standard

To survive a motion to dismiss based on Rule 12(b)(6), a
plaintiff must make factual allegations sufficient to "state a
claim to relief that is plausible on its face." Ashcroft v.
Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially
plausible if it "pleads factual content that allows the court to
draw the reasonable inference that the defendant is liable for
the misconduct alleged." Id.

In testing a complaint's sufficiency, the court employs a
two-step approach.  See Ocasio-Hernández v. Fortuño-Burset, 640
F.3d 1, 12 (1st Cir. 2011).  First, the court must identify and
disregard statements that "merely offer legal conclusions
couched as fact or threadbare recitals of the elements of a
cause of action." Id. (cleaned up).  Second, after crediting as
true all non-conclusory factual allegations and the reasonable
inferences drawn from those allegations, the court determines if
the claim is plausible. Id.  The plausibility requirement
"simply calls for enough fact to raise a reasonable expectation

---

[3] Defendants also filed a reply brief (Doc. No. 17).

that discovery will reveal evidence" of illegal conduct.
Twombly, 550 U.S. at 556.

## Background[4]

In April 2020, State Veterinarian Stephen Crawford reported to Danville that Cote was selling puppies in violation of state licensing requirements.  As a result of Crawford's report, Lt. Justine Merced obtained a search warrant to investigate the allegations.  Following Merced's investigation, Danville charged Cote with "Transferring Household Pets Without a License," in violation of N.H. Rev. Stat. Ann. § 437:8.  In connection with that charge, a New Hampshire court issued a bail order, prohibiting Cote from "selling puppies illegally."  Compl. (Doc. No. 1) ¶ 15.  Cote maintains that because the puppy breeding and sales occurred on a farm, the sales were of "livestock" and therefore exempt from the licensing requirements of RSA 437:8.

In the summer of 2021, Merced began a new investigation into whether Cote continued to sell puppies in violation of the bail order.  As part of this investigation, Merced obtained another search warrant.  On December 8, 2021, Merced and other Danville officers executed the warrant at Cote's home.

---

[4] Unless otherwise noted, the court draws the following factual allegations from Cote's complaint (Doc. No. 1), and consistent with the applicable standard of review, the factual allegations are assumed true.

Cote's husband was not home at the time, and Cote was "just getting out of the shower" when she heard knocking on the door. Compl. (Doc. No. 1) ¶ 20.  Cote then went onto her patio in a towel.  Merced issued commands to Cote, and in response, Cote tried to explain that she wanted to get dressed.  Merced, however, insisted that Cote be handcuffed.  According to Cote, when she tried to cover herself, Merced "used a door to slam [Cote] against a wall."  Id. ¶ 22.  Merced allegedly slammed Cote two or three times, which caused Cote pain and discomfort.

Although the sequence of events is not clear, at some point, Merced and Cote relocated to Cote's bedroom.  Merced then escorted Cote out of her bedroom and down the stairs in front of the other Danville officers, while Cote was still naked.  Lt. Joshua Stevens and Sgt. Jessie Hamlin observed Merced "parading" Cote naked around the house in front of other male officers. Id. ¶ 24.  Cote claims that at least one male officer made humiliating comments about her body.  Cote's husband eventually came home and observed Cote naked and handcuffed in the presence of Danville officers.  When he insisted that Cote be permitted to dress herself, Merced agreed.

Ultimately, Merced signed criminal complaints alleging that Cote violated her bail conditions by selling puppies without the proper license.  In addition to maintaining that the puppies were livestock exempt from licensing requirements, Cote also

claims that her husband sold the puppies without her
involvement.  Cote further alleges that all of the evidence
gathered by Merced demonstrated that Cote's husband was selling
puppies.  In November 2023, all charges against Cote "were
dismissed in accordance with the provisions of a deferred
prosecution agreement in which . . . Cote maintained her
innocence."  Id. ¶ 29.

## Discussion

Defendants move to dismiss Counts I, III, V, and VI of
Cote's complaint, arguing that:(1) they are entitled to
qualified immunity because Cote fails to allege that they
violated a clearly established constitutional right; and (2)
Cote's allegations fail to state a claim for relief.  Cote
objects, asserting that she sufficiently alleged constitutional
violations and that defendant's arguments are improperly
grounded in factual disputes.  The court first addresses
defendants' inclusion of a police report in their motion to
dismiss before turning to the sufficiency of Cote's claims.

### I.  Defendants' Inclusion of the Police Report

As part of their motion to dismiss, defendants included and
rely upon a police report regarding the December 8, 2021 warrant
execution and arrest of Cote.  Defendants argue that their
inclusion of the police report is proper as an undisputed,
authentic document.

"[A] motion to dismiss under Rule 12(b)(6) generally provides no occasion upon which to consider documents other than the complaint." Doe v. Pawtucket Sch. Dep't, 969 F.3d 1, 8 (1st Cir. 2020). In Doe, the First Circuit held that the district court's reliance on police and medical reports submitted by defendants in support of their motion to dismiss was "flawed." Id. It reasoned that the reports were "not expressly referenced in the complaint, the complaint [did] not rely upon them or incorporate them, and the allegations in the complaint [were] not 'dependent' upon their contents." Id. Moreover, the court noted that to the extent a report included substantive information contrary to plaintiff's allegations, there would be "a battle of proof and credibility, not a failure to allege a claim." Id. at 9.

Here, as with the defendants in Doe, defendants' inclusion of the police report in their Rule 12(b)(6) motion is improper. Cote does not reference the police report in her complaint, and the complaint neither relies on the report nor incorporates it. Further, the substance of the police report raises factual disputes and credibility issues. Accordingly, the court declines to consider the police report and will limit its review to the allegations in Cote's complaint.

## II.  Qualified Immunity

Counts I, III, V, and VI of Cote's complaint assert claims
under Section 1983 for violations of Cote's Fourth Amendment
constitutional rights.  "To state a claim under Section 1983, a
plaintiff must show that the challenged conduct was committed by
a person acting under color of state law and that the conduct
worked a deprivation of rights, privileges, or immunities
secured by the Constitution or federal law." Diaz v. Devlin,
229 F. Supp. 3d 101, 109 (D. Mass. 2017) (citing 42 U.S.C. §
1983; Soto v. Flores, 103 F.3d 1056, 1061 (1st Cir. 1997)).[5]
"Section 1983 liability 'may be imposed both for action that
deprives a plaintiff of a constitutional right and for failure
to act, when there is a duty to act, to prevent such a
deprivation.'" Id. (quoting Clark v. Taylor, 710 F.2d 4, 9 (1st
Cir. 1983)).

"Qualified immunity is a doctrine that shields government
officials from individual-capacity suits for damages under §
1983 'when they made a decision that, even if constitutionally
deficient, reasonably misapprehended the law governing the
circumstances they confronted.'" Lachance v. Town of Charlton,
990 F.3d 14, 20 (1st Cir. 2021) (quoting Taylor v. Riojas, 592

---

[5] Defendants do not challenge their status as persons
"acting under color of state law."

U.S. 7, 8 (2020)) (cleaned up).  Accordingly, government
officials, including police officers, "are immune from such
suits unless '(1) they violated a federal statutory or
constitutional right, and (2) the unlawfulness of their conduct
was 'clearly established at the time.'"  Id. (quoting Irish v.
Fowler, 979 F.3d 65, 73 (1st Cir. 2020)).

The "clearly established" requirement is satisfied when:
(a) "the legal contours of the right in question were
sufficiently clear that a reasonable officer would have
understood that what he was doing violated the right,"; and (b)
"in the particular factual context of the case, a reasonable
officer would have understood that his conduct violated the
right."  Stamps v. Town of Framingham, 813 F.3d 27, 34 (1st Cir.
2016) (quoting Mlodzinski v. Lewis, 648 F.3d 24, 32-33 (1st Cir.
2011)).  Although a "case directly on point" is unnecessary to
pierce qualified immunity, "existing precedent must have placed
the statutory or constitutional question beyond debate."
Mullenix v. Luna, 577 U.S. 7, 12 (2015) (quoting Ashcroft v. al-
Kidd, 563 U.S. 731, 741 (2011)).

> It is not always possible to determine before any
> discovery has occurred whether a defendant is entitled
> to qualified immunity, and courts often evaluate
> qualified immunity defenses at the summary judgment
> stage. Nevertheless, the determination can be made on
> a motion to dismiss when the complaint provides all of
> the facts needed to assess the plaintiff's claim.

Giragosian v. Bettencourt, 614 F.3d 25, 29 (1st Cir. 2010).

Defendants argue that they are entitled to qualified immunity as to Counts I, III, V, and VI because Cote failed to identify existing precedent, demonstrating that defendants conduct violated "clearly established" constitutional rights. As to each count, the court first considers the sufficiency of Cote's allegations regarding violations of her constitutional rights before turning to whether defendants' alleged unlawful conduct was clearly established at the time of the violation.

## A. Excessive Force (Count I)

A Fourth Amendment excessive force claim requires proof that "the defendant officer employed force that was unreasonable under the circumstances." Kenney v. Floyd, 700 F.3d 604, 609 (1st Cir. 2012) (cleaned up). Courts must assess the reasonableness of a use of force "from the perspective of a reasonable officer on the scene" and must account "for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." Graham v. Connor, 490 U.S. 386, 396–97 (1989). To evaluate the reasonableness of the force used, courts consider: (1) "the severity of the crime at issue"; (2) "whether the suspect poses an immediate threat to the safety of the officers or others"; and (3) "whether the suspect is actively resisting arrest or attempting to evade arrest by

flight." Ciolino v. Gikas, 861 F.3d 296, 302 (1st Cir. 2017)

(quoting Graham, 490 U.S. at 396) (cleaned up).

Cote alleges that Merced slammed her with a door two or

three times, which caused her pain and discomfort.  According to

the allegations in Cote's complaint, at the time of Merced's use

of force, Cote was not attempting to avoid a lawful seizure.

Moreover, nothing in Cote's complaint suggests that she was

resisting arrest or posed any immediate threat to the safety of

Merced.  Under these circumstances, the court finds that an

"objectively reasonable police officer" would have taken a more

measured approach, and therefore, Cote adequately alleges

excessive force.  See id. at 304 (noting that under similar

circumstances, tackling the plaintiff sufficiently stated a

claim of excessive force at the motion-to-dismiss phase).

Regarding the second prong of the qualified immunity test,

"[t]he legal contours of the right to be free from the use of

excessive force were clearly established." Pearson v. Eldridge,

No. 21-cv-567-PB, 2022 WL 903112, at *4 (D.N.H. Mar. 28, 2022).

In Pearson, the court held that the second prong was satisfied

where defendant allegedly slammed plaintiff against a police

cruiser and pinned the plaintiff in that position for several

minutes.  Id.  The court further noted that "the conduct was

such an obvious violation of the Fourth Amendment's general

prohibition on unreasonable force that a reasonable officer

would not have required prior case law on point to be on notice that his conduct was unlawful." Id. (quoting Raiche v. Pietroski, 623 F.3d 30, 38 (1st Cir. 2010)). As with the plaintiff in Pearson, accepting Cote's allegations as true, the unlawfulness of Merced's alleged conduct was clearly established at the time. In sum, Cote sufficiently alleges a claim of excessive force under Section 1983, and Merced is not entitled to qualified immunity at this juncture. Accordingly, defendants' motion to dismiss is denied as to Count I.

### B. Unreasonable Seizure (Count III)

"The Supreme Court has interpreted the Fourth Amendment to include the right to be free from unjustified nudity during an arrest." Chaney v. City of Framingham, No. 18-10413-MPK, 2019 WL 6496842, at *4 (D. Mass. Dec. 3, 2019) (citing L.A. Cty. Cal. v. Rettele, 550 U.S. 609, 615 (2007)). In evaluating whether the nudity was unjustified, courts employ a balancing test, under which "defendants must show that a decision to not allow plaintiff to dress was reasonable in light of countervailing safety or security needs." Id. "[F]orced nudity for a period longer than required to ensure officer safety and security would constitute an unreasonable seizure under the Fourth Amendment." Amato v. Steele, No. 13-cv-13094-IT, 2015 WL 3466395, at *4 (D. Mass. June 1, 2015).

Cote alleges that at the time defendants executed the
warrant, she was just getting out of the shower and was in a
towel.  When she tried to cover herself, Merced purportedly used
a door to slam Cote against the wall several times, and
ultimately "escorted [Cote] out of her bedroom and down the
stairs in front of the warrant execution team while still
naked."  Compl. (Doc. No. 1) ¶ 23.  Cote further claims that at
least one male officer made humiliating comments about her body,
and that Stevens and Hamlin observed Merced "parading" Cote
naked around the house.  Id. ¶ 24.  Nothing in the complaint
suggests that the safety and security of the officers required
Cote's "forced nudity."  Accordingly, accepting Cote's
allegations as true, she sufficiently alleges a claim of
unreasonable seizure under Section 1983.

In addition, as noted by the court in Amato, "it was
clearly established prior to December 24, 2012 that forced
nudity for a period longer than required to ensure officer
safety and security would constitute an unreasonable seizure
under the Fourth Amendment."  Amato, 2015 WL 3466395, at *4; see
also Rettele, 550 U.S. at 615 (setting out the right to be free
from unjustified nudity during a seizure).  Thus, where the
unlawfulness of Merced's alleged conduct was clearly established
at the time, Merced is not entitled to qualified immunity at

this juncture, and therefore, the motion to dismiss is denied as
to Count III.

### C. Failure to Intervene (Count V)

While the First Circuit has primarily addressed failure-to-
intervene claims in the excessive force context, see Cosenza v.
City of Worcester, 355 F. Supp. 3d 81, 100 (D. Mass. 2019)
(collecting cases), it has not "explicitly limited failure-to-
intervene claims to excessive force cases and occasionally
described actionable failure to intervene claims in terms that
could encompass a broad range of constitutional rights." Id.
(cleaned up).  For example, the First Circuit has recognized
that a "law enforcement officer has an affirmative duty to
intercede on the behalf of a citizen whose constitutional rights
are being violated in his presence by other officers." Torres-
Rivera v. O'Neill-Cancel, 406 F.3d 43, 54 (1st Cir. 2005)
(applying the duty to intervene in the excessive-force context)
(emphasis omitted); see also Clark v. Taylor, 710 F.2d 4, 9 (1st
Cir. 1983) ("Liability under section 1983 may be imposed both
for action that deprives a plaintiff of a constitutional right
and for failure to act, when there is a duty to act, to prevent
such a deprivation.").

Nevertheless, "while law enforcement officers may have a
general obligation to intercede if a constitutional violation is
committed in their presence, this duty has not been clearly

established outside the excessive force context." Perrot v. Kelly, No. 18-cv-10147-DPW, 2023 WL 2939277, at *12 (D. Mass. Feb. 15, 2023), R&R adopted, 2023 WL 2607763, at *2 (D. Mass. Mar. 23, 2023) (citing Cosenza v. City of Worcester, 355 F. Supp. 3d 81, 101 (D. Mass. 2019)); see also Galego v. City of Fall River, No. 22-12243-MPK, 2023 WL 8039295, at *8, n.13 (D. Mass. Nov. 20, 2023) ("There is debate in this circuit as to whether an officer has a duty to intervene in a constitutional violation other than the use of excessive force.").

Cote claims that defendants, and in particular Stevens and Hamlin, failed to intervene when Merced violated Cote's rights by parading her naked through the house in front of other male Danville officers.  Even assuming Cote's allegations sufficiently state a claim for failure to intervene, defendants' conduct did not violate a clearly established right.  As noted by the court in Galego in 2023, there is "debate . . . as to whether an officer has a duty to intervene in a constitutional violation other than the use of excessive force." Galego, 2023 WL 8039295, at *8, n.13

Cote relies on Colbruno v. Kessler, 928 F.3d 1155 (10th Cir. 2019), among other cases, for the proposition that: "any reasonable officer should have known that parading a naked detainee through a public place without an appropriate justification violates the detainee's constitutional rights."

14

This proposition, however, goes to Cote's unreasonable seizure claim, as opposed to an officer's separate duty to intervene under such circumstances.  As noted by the court in Cosenza, the First Circuit "seems to have suggested that the duty to intervene in the context at issue must have also been clearly established."  Cosenza, 355 F. Supp. 3d at 101 (discussing language in Torres-Rivera, implying "that not only must the underlying right be clearly established but also the duty for an officer to intervene in the relevant circumstances.").

Courts in other jurisdictions have concluded that a failure to intervene claim could proceed where officers "were present when [a plaintiff] was brought outside in a state of nudity and had the opportunity to clothe her."  See e.g. Quick v. Hall, No. 2:18-cv-1547, 2020 WL 1164773, at *13 (S.D. Ohio Mar. 11, 2020) (reasoning that it is clearly established in the Sixth Circuit that an officer "has a duty to intervene with respect to any constitutional violation when that officer knows of the violation and has an opportunity to prevent harm from occurring.").  Nevertheless, in light of the Perrot, Galego, and Cosenza rulings, this court cannot conclude that the duty to intervene under these circumstances is "beyond debate." Mullenix, 577 U.S. at 12.  As Cote offers no precedent to suggest otherwise, defendants' motion to dismiss is granted as to Count V.

15

### D. Malicious Prosecution (Count VI)

Under New Hampshire law, "[t]he four elements of a claim for malicious prosecution are: (1) the plaintiff was subjected to a criminal prosecution or civil proceeding instituted by the defendant; (2) without probable cause; (3) with malice; and (4) the prior action terminated in the plaintiff's favor." Farrelly v. City of Concord, 168 N.H. 430, 445, 130 A.3d 548 (2015). Similarly, to state a Fourth Amendment malicious prosecution claim under Section 1983, a plaintiff must allege: "the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." Hernandez-Cuevas v. Taylor, 723 F.3d 91, 101 (1st Cir. 2013) (quoting Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir.2012)).

"Probable cause exists when police officers, relying on reasonably trustworthy facts and circumstances, have information upon which a reasonably prudent person would believe the suspect had committed or was committing a crime." Charron v. Cty. of York, 49 F.4th 608, 615-16 (1st Cir. 2022) (quoting United States v. Jones, 432 F.3d 34, 41 (1st Cir. 2005)). A plaintiff can demonstrate the absence of probable cause and malice where statements in a warrant affidavit amount to "deliberate falsehood or . . . reckless disregard for the truth," and "those deliberate falsehoods were necessary to the . . . probable cause

16

determination." Hernandez-Cuevas, 723 F.3d at 102 (quoting

Franks v. Delaware, 438 U.S. 154, 171 (1978)).  In addition, it

has "long been clearly established law that the Fourth Amendment

prohibits a police officer from manufacturing probable cause by

knowingly including false statements in a warrant affidavit."

Id. at 96.

In support of their motion to dismiss, defendants argue

only that Cote fails to allege that defendants initiated a

criminal proceeding against her without probable cause.  Cote,

however, claims that all of the evidence gathered by Merced

revealed that Cote's husband, as opposed to Cote, was selling

the puppies.  Yet, Merced executed a criminal complaint,

alleging that Cote violated pet licensing statutes and the bail

order.  Drawing reasonable inferences in favor of Cote, her

allegations suggest that Merced manufactured probable cause by

knowingly including false statements in the criminal complaint.

Accepting these allegations as true, the unlawfulness of

Merced's conduct was clearly established at the time.

Hernandez-Cuevas, 723 F.3d at 102.  Therefore, Cote adequately

alleges a claim for malicious prosecution, and defendants have

not demonstrated that they are entitled to qualified immunity at

this juncture.  Accordingly, defendants' motion is denied as to

Count VI.

## CONCLUSION

For the reasons set forth above, the defendants' motion to dismiss (Doc. No. 10) is granted as to Count V and otherwise denied.

SO ORDERED.

_____
Andrea K. Johnstone
United States Magistrate Judge

August 1, 2025

cc:  Counsel of Record